HUMMEL & DOWNING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 26283. Promulgated October 24, 1952.

*Elden McFarland, Esq.*, for the petitioner.
*Arthur B. White, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge:* The petitioner was a wholly owned subsidiary of Corn Products Refining Company at all times material hereto prior to December 1, 1941, when it was purchased by Cornell Wood Products Company.

The petitioner had been engaged for many years in manufacturing and selling paper board containers and it manufactured two types of paper board which it used in the construction of the containers. One type of paper board which it manufactured was called jute liner board which consists, by weight, of approximately 75 per cent waste paper and 25 per cent kraft pulp. Kraft pulp is a type of wood pulp. The other type of paper board manufactured by the petitioner is called chip board and is made entirely from waste paper. All of the jute liner board and most of the chip board manufactured by the petitioner was used by it in manufacturing the containers which it sold, but it sold an undisclosed part of its chip board production. Containers made from jute liner board were sold in competition with others fab-

ricated from kraft liner board made entirely from kraft pulp. Most domestic manufacturers of kraft pulp used their entire product to make kraft liner board.

The only grounds for relief urged by the petitioner in its brief are based upon section 722 (b) (2). The only economic event upon which it now relies is an alleged overexpansion of capacity in the domestic kraft pulpmaking industry that occurred late in 1937 and 1938. It contends that that overexpansion depressed its business in 1938 and 1939 and its business was depressed in 1936 and 1937 due to "anticipation" of that overexpansion. The petitioner was not engaged in making kraft pulp but purchased most, if not all, of its kraft pulp from foreign sources. Nevertheless, it attempts to show that its business was depressed by overexpansion in the domestic kraft pulp industry since that overexpansion reduced the price of kraft liner board, a product competing with jute liner board which the petitioner manufactured solely for its own purpose in making containers.

The petitioner filed applications for relief on Form 991 in which it stated that it was claiming relief under section 722 (b) (2). The forms required the taxpayer, *inter alia*, to describe the temporary economic events unusual in its case or in the case of an industry of which it was a member, upon which it based its claims, to describe the industry which was depressed, and to furnish names and addresses of other members of the industry. The taxpayer typed in at that place on the applications "See attached statement." The statement contained the following:

The taxpayer's business was depressed during the base period (1936–1939) because of a price war in the industry, with the result that the taxpayer's profits during the base period do not represent a true criterion of its normal profits.

The only other information in the statement which would have any bearing on the required explanations or would supply information was a list of the profits of the taxpayer for each of the years 1917 through 1942. Copies of those applications were made a part of the petition. There is nothing before the Court to show that the petitioner ever contended to the Commissioner that it was entitled to relief under section 722 (b) (2) on any ground other than that quoted above.

The Commissioner notified the petitioner that it had not established its right to the relief requested in its applications for relief and of his denial of the claim for refund asserted in those applications "and in the related claim (Form 843), filed January 31, 1946 for the year 1942." He explained that careful consideration had been given to the applications and the claim above referred to and to "supplements to these claims filed June 15, 1945, June 18, 1947 and August 29, 1947;

statement furnished you on January 4, 1946; protest filed January 23, 1946; copy of Revenue Agent's report and supplement thereto furnished to you on December 4, 1947; statements made at Field Conferences on December 20, 1946, October 22, 1947, and July 21, 1948; and conference with the Excess Profits Tax Council on April 19, 1949." The record contains no copies of or information in regard to the claim on Form 843, the supplements to the claims, or the documents or statements referred to in the above quotation which might have been furnished to the Commissioner of Internal Revenue.

One of the examples which Congress intended to include within section 722 (b) (2) mentioned in H. Rept. No. 2333, 77th Cong., 1st Sess., 1942-2 C. B. 372, is a price war by members of an industry where, "as a result of sale below cost during those years, the members of the industry sustained losses" after which the members resumed their normal earning level. Regulations 112, section 35.722-3, at the bottom of page 130, describe a price war in terms of sales below cost. The present record does not indicate that members of the industry to which the petitioner belonged were engaged in a price war of that kind during the base period years. The petitioner does not use the phrase "price war" at any place in its two briefs filed in this proceeding, and a fair conclusion from the entire record is that the petitioner is not now contending that it is entitled to relief under section 722 (b) (2) because during the base period a temporary and unusual event in the form of a "price war" depressed its business or the business of an industry of which it was a member. It states its present contention as follows on page 12 of its reply brief: "it was the unprecedented temporary overexpansion in kraft pulp capacity that constituted the temporary and unusual economic circumstances responsible for the base period depression in its earnings."

A question naturally arising in the mind of the Court under such circumstances is whether that ground for relief now argued before the Court was ever presented to the Commissioner for his consideration prior to his denial of the applications. Tax Court Rule 63 requires that a copy of the claim or application for refund or relief shall be attached to the petition. The rule refers to the complete applications and claims, including any supplements, amendments, or other additions to the originals. The purpose of that rule is to have it appear in the petition that the grounds for relief and supporting statements of fact relied upon before the Court had been presented to the Commissioner.

Overexpansion in kraft pulp capacity was not presented to the Commissioner in the applications on Form 991 as a ground for relief under section 722 (b) (2) nor were facts to support such a ground for relief set forth in those applications. Furthermore, it does not

appear in the present record that such a ground or a statement of facts to support it was ever presented to the Commissioner during his consideration of the applications. His denial of these applications for relief and the claim for refund does not indicate that he considered and rejected any such ground for relief as that now advanced based upon overexpansion in kraft pulp capacity.

The inadequacy of the pleadings in this respect was called to the attention of the petitioner's counsel during the trial but he made no effort to amend the pleadings or to introduce additional documents in evidence such as supplements to the claims or statements furnished to the Commissioner. The large amount of increased capacity for the domestic manufacture of kraft pulp to which the petitioner refers became available late in 1937 and in 1938, but the petitioner is contending that anticipation of that situation caused its business to be depressed in 1936 and 1937. Counsel for the Commissioner objected to the introduction of evidence to support that contention because he said it had not been made to the Commissioner until after he had denied the applications relating to 1941 and 1942. The Court at that time pointed out that the petitions contained only copies of the applications on Forms 991 and those applications did not contain any of the information which the petitioner was trying to introduce. The real question is whether the Court should consider any of the grounds now urged by this petitioner.

This Court has clearly indicated in its prior decisions that it will not consider grounds for relief or supporting facts unless they have been presented to the Commissioner for his consideration prior to his rejection of the applications and claims. *Blum Folding Paper Box Co.*, 4 T. C. 795; *Monarch Cap Screw & Manufacturing Co.*, 5 T. C. 1220; *Alexandria Amusement Corporation*, 16 T. C. 446; *Wadley Co.*, 17 T. C. 269. Cf. *Angelus Milling Co.*, 1 T. C. 1031, affd. 144 F. 2d 469, 325 U. S. 293. The Supreme Court in the *Angelus* case said: "Candor does not permit one to say that the power of the Commissioner to waive defects in claims for refund is a subject made crystal-clear by the authorities." It does not appear in this case that the petitioner ever attempted to amend its claims.

Regulations 112, which may have the force of law in a situation like this, provide in section 35.722–5 (a) near the bottom of page 156 as follows:

* * * If it is not possible for the taxpayer within six months from the date prescribed by law for filing its excess profits tax return to obtain, prepare, and present all the detailed information required to establish its eligibility for relief and the amount of its constructive average base period net income, such information may be submitted within a reasonable time after filing the application as a supplement to the application. No new grounds presented by the taxpayer after the date prescribed by law for filing its application will be considered in deter-

mining eligibility for relief or the amount of the constructive average base period net income to be used in computing such relief for a taxable year.

The only supplements to the claims of the petitioner mentioned herein were, apparently, filed too late under that regulation to present any new grounds for relief. Since it does not appear that overexpansion in the kraft pulp capacity was ever properly advanced for the consideration of the Commissioner prior to the time that he denied the applications involved herein, it obviously does not appear that he waived any defects in those applications or claims due to their failure to set forth that ground as a basis for relief under section 722 (b) (2). The reasons why courts will not consider grounds and facts not presented to the Commissioner for his consideration in connection with applications and claims of this kind have been set forth adequately in the cases cited above, and this Court, for those reasons, refuses to consider the only ground now advanced by this petitioner for relief because the record not only fails to show that such a ground was presented to the Commissioner but it tends to show affirmatively that it was not. An order will be entered dismissing the proceeding. Cf. last paragraph in *Blum Folding Paper Box Co., supra.*